IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ARTHREX, INC., | § |
| | § |
| v. | § Case No. 2:15-CV-01047-RSP |
| | § |
| SMITH & NEPHEW, INC., | § |
| ARTHROCARE, CORP. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Smith & Nephew, Inc. and Arthrocare Corporation's (collectively "Smith & Nephew") Motion for summary judgment of noninfringement with respect to U.S. Patent No. 9,179,907 ("the '907 patent"). Dkt. 185. To assist Arthrex in narrowing its case for trial, the Court previously entered a short Order indicating that Smith & Nephew's Motion would be denied, and that an additional Order would follow. Dkt. 262. This Memorandum Opinion and Order explains the reasons for the denial.

### I. BACKGROUND

On July 17, 2015, Arthrex filed a Complaint against Defendants Arthrocare and Smith & Nephew, accusing the Defendants of infringing twelve patents related to suture anchor devices. Case No. 2:15-cv-1047, Dkt. 1. The '907 patent issued on November 10, 2015. The same day, Arthrex filed a second Complaint against Defendants, accusing Defendants of infringing the '907 patent. Case No. 2:15-cv-1756, Dkt. 1. The cases were consolidated on February 1, 2016. Case No. 2:15-cv-1047, Dkt. 37.

The '907 patent relates to a suture anchor useful in securing soft tissue to bone during reconstructive surgery. The Background of the patent explains that when "soft tissue such as a ligament or a tendon becomes detached from a bone, surgery is usually required to reattach or reconstruct the tissue." '907 patent at 1:20-23. Various devices such as staples and screws were

1

available to secure tissue to bone. *Id.* at 1:23-26. Another type of device, referred to as a "threaded suture anchor," was also available, but existing suture anchors purportedly required surgeons to tie knots in suture to ensure that tissue securely attached to bone. *Id.* at 1:32-36. The '907 patent explains that the invention eliminates the need for knots because the inventive device "traps" suture into a secure position, ensuring that tissue remains attached. *Id.* at 1:43-59.

Claim 1 of the '907 recites:

> A suture securing assembly, comprising:
> an inserter including a distal end, a proximal end, and a longitudinal axis between the distal end and the proximal end;
> a first member including an eyelet oriented to thread suture across the longitudinal axis, the first member being situated near the distal end of the inserter, the first member being configured to be placed in bone; and
> **a second member** situated near the distal end of the inserter, the second member being moveable by a portion of the inserter relative to the first member in a distal direction toward the eyelet into a **suture securing position where the second member locks suture in place**.

'907 patent at 10:21-34 (emphasis added).

Tissue can be secured to bone using the suture assembly of claim 1 using the following method, which is illustrated by the '907 patent's Figures 25 and 27 shown below. The surgeon first drills a hole (190) into the bone at the location where tissue is to be attached. *Id.* at 5:35-38. The surgeon then places the first member, which includes suture threaded through the eyelet, into the bone hole using the inserter (the inserter is not shown in Figures 25 and 27). Once the first member is placed into the bone hole, the surgeon moves the second member (120) down the longitudinal axis of the first member and into the bone hole toward the eyelet, wedging suture in place against the inner surface of the bone hole.



During claim construction, the Court construed "a suture securing position where the second member locks suture in place" to mean "a securing position where the second member is capable of locking or jamming a suture by *wedging the suture between the second member and bone*." Dkt. 150 at 76 (emphasis added). The Court explained that the '907 patent consistently referred to embodiments of the invention having a configuration that secures suture against the "sidewalls" of the bone hole. *Id.* The intrinsic record establishes that this configuration results in "much stronger fixation" than had been achievable with the prior art, which required surgeons to tie suture knots. *See id.* (quoting patents in the '907 patent family).

Arthrex alleges that Defendants are infringing the '907 patent by making, selling, offering for sale, and importing devices encompassed by claim 1. Dkt. 90. In operation, the accused devices do not wedge suture between the second member and the inner surface of the bone hole. Rather, the devices lock suture in place by "pinching" suture between the first and second device members. Dkt. 185 at 2. Accordingly, in light of the Court's claim construction, Arthrex contends that the accused devices infringe under the doctrine of equivalents because locking suture in place using a "pinching" mechanism between two device components is equivalent to locking suture in place by wedging it between the second member and bone.

3

## II. DISCUSSION

Smith & Nephew argues that summary judgment must be granted for two reasons. First, Smith & Nephew contends that Arthrex cannot rely on the doctrine of equivalents to encompass subject matter that the patent expressly states falls outside the scope of the invention. Dkt. 185 at 2. Second, Smith & Nephew contends that Arthrex's expert failed to provide the requisite "particularized testimony" concerning Arthrex's doctrine of equivalents contention. *Id.* at 4.

### A. Legal Standard

Summary judgment must be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures,*

*LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

Equivalence may be shown in one of two ways. *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 700 (Fed. Cir. 2014). "[A] claim limitation not literally met may be satisfied by an element of the accused product if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1351 (Fed. Cir. 2003) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997)). Equivalence can also be established "by showing on an element-by-element basis that 'the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product,' often referred to as the function-way-result test." *Intendis*, 822 F.3d at 1360 (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)). "To succeed on a doctrine of equivalents theory, the patentee must demonstrate equivalence under one of these two tests." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).

There are a number of exceptions to and limitations on the doctrine of equivalents, including prosecution history estoppel and disclaimer or disavowal of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734-37 (2002) (prosecution history estoppel); *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 998 (Fed. Cir. 2016) (disclaimer). A version of disclaimer or disavowal occurs "when a specification excludes certain prior art alternatives from the literal scope of the claims and criticizes those prior art alternatives," which precludes the patentee from using "the doctrine of equivalents to capture

those alternatives." *L.B. Plastics, Inc. v. Amerimax Home Prod., Inc.*, 499 F.3d 1303, 1309 (Fed. Cir. 2007).

### B. Whether Arthrex Disclaimed or Disavowed Claim Scope

Smith & Nephew argues that because the Court construed the term "suture securing position" to mean a position in which suture is wedged between the second member and bone, Arthrex cannot capture through the doctrine of equivalents a device that secures suture in a different manner. *See* Dkt. 185 at 8-12. Smith & Nephew's argument assumes that Arthrex disclaimed or disavowed any such equivalent. *See id.* at 8 ("Arthrex 'cannot use the doctrine of equivalents to claim subject matter that the specifications expressly state fall outside the invention.") (quoting *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1307 (Fed. Cir. 2011)).

The Court disagrees. First, while the Court's Claim Construction Order discusses references to "the invention" in the '907 patent's family, the Court did not find that these references constituted disclaimer or disavowal of equivalents to the "suture securing position" element. *See* Dkt. 150 at 76-78. "A disclaimer or disavowal of claim scope must be clear and unmistakable, requiring 'words or expressions of manifest exclusion or restriction' in the intrinsic record." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). The Federal Circuit has held that "statements such as 'the present invention includes . . . ,' 'the present invention is . . . ,' and 'all embodiments of the present invention are . . .' to be clear and unmistakable statements constituting disavowal or disclaimer." *Id.* (citing *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016)). Rather than declare statements in the '907 patent's family clear and unmistakable disclaimer of equivalents, the intent of the

Court's Order was to establish the Court's construction as the construction that "most naturally aligns with the patent's description of the invention." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc). To be clear, the specification of the '907 patent does not include a disclaimer or disavowal of claim scope. The '907 patent makes numerous references to "the invention," but none of these references rise to the level of clear and unmistakable disclaimer because the references define only "embodiments" of the invention. *See Unwired Planet*, 829 F.3d at 1358; *see also Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1315 (Fed. Cir. 2010), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), (patentee's discussion of particular difficulties associated with using two-piece design did not disclaim two-piece design).

Second, to the extent that references to "the invention" in the '907 patent's family constitute a limitation on the text of the claims, such a limitation does not necessarily limit the claims to their literal scope. A disclaimer or disavowal of claim scope using references to "the invention" is often functionally the same as including the limiting language in the claims themselves. Smith & Nephew cites no authority for the proposition that a limitation placed on the literal scope of the claims, whether by the patent's description or otherwise, necessarily precludes the claims from being infringed under the doctrine of equivalents.

To the contrary, something more is required for a limitation in a patent's specification to preclude the claims from reaching equivalents. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1307 (Fed. Cir. 2011). In *Retractable Technologies*, for example, the specifications defined "the invention" as being constructed of "a single piece and expressly distinguish[ed] the invention from the prior art based on this feature." *Id.* Accordingly, the Federal Circuit explained that because the specifications "expressly state[d]" that a product

7

constructed of more than one piece "fall[s] outside the invention," the patentee cannot capture such a product through the doctrine of equivalents. *Id.* In other words, the patentee disclaimed *the equivalent*, as opposed to merely limiting the literal scope of the claims by "disclaiming" that the claims are more limited than the claim language itself might suggest. *See id.*; *see also Sunbeam Prod., Inc. v. HoMedics, Inc.*, 412 F. App'x 263, 267 (Fed. Cir. 2010) (by disparaging bearings that "rock and pivot" in the Background of the patent, and distinguishing the invention from such bearings, the patentee disclaimed equivalents that rock and pivot).

Smith & Nephew does not contend that the '907 patent disparages devices that secure suture using a pinching mechanism. Rather, the '907 patent disparages prior art devices that require surgeons to tie knots in suture. If the accused product required a surgeon to tie suture knots, cases such as *Retractable Technologies* and *Sunbeam Products* would be indistinguishable. But there is nothing in the record suggesting that the accused products require suture knots. Nor is there evidence suggesting that Arthrex intended to expressly exclude all devices that do not secure suture by wedging suture between the second member and bone. Smith & Nephew points to Arthrex marketing materials allegedly disparaging "pinching" mechanisms, *see* Dkt. 185 at 2, but Smith & Nephew cites no authority suggesting that marketing efforts affect the scope of patent claims.

### C. Particularity of Arthrex's Expert Testimony

Smith & Nephew argues that summary judgment of noninfringement must be granted because Arthrex's experts do not provide sufficiently "particularized testimony" and "linking argument" concerning the "suture securing position" limitation. Dkt. 185 at 4 (quoting *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005)). Arthrex's experts testified that the accused pinching mechanism is equivalent to the claimed mechanism of

wedging suture between the second member and bone because the accused pinching mechanism provides "a surface against which the [accused] second member can lock or jam suture by wedging." *See* Dkt. 185 at 6 (quoting Arthrex's expert testimony). Smith & Nephew contends that such testimony is insufficient to survive summary judgment.

The Court disagrees. Arthrex's experts explain in detail how all but one element falls within the literal scope of the claims. With respect to the "suture securing position" element, Arthrex's experts explain that this element is met by the accused device under the doctrine of equivalents because the accused device locks suture into place between a first and second device member, and thus the accused device provides a surface (albeit not a bone surface) against which suture can be wedged. *See* Dkt. 205 at 17 (quoting expert testimony). Unlike the conclusory testimony scrutinized by the Federal Circuit in cases such as *Network Commerce*, 422 F.3d at 1363, Arthrex's expert testimony explains the basis for equivalence in a manner sufficient to guide the fact finder in making a decision. *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) (requiring testimony concerning equivalence to provide sufficient "analytical framework" for the fact finder). Accordingly, the Court finds the testimony to be sufficiently particularized.

### III. CONCLUSION

Because Arthrex has raised a triable issue regarding whether the accused products infringe the '907 patent under the doctrine of equivalents, Smith & Nephew's Motion for summary judgment (Dkt. 185) is **DENIED**.

**SIGNED this 5th day of December, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

9